YATES, Judge.
Carlton Denard filed a complaint against the Board of Managers, City of Birmingham Retirement and Relief System (Board), alleging that he was wrongfully denied the continuance of the “extraordinary disability allowance” that had previously been granted to *630 him and requesting that the trial court issue a writ of mandamus directing the Board to continue the allowance. The trial court, after a hearing, entered a judgment in favor of the Board, and Denard appeals.
At the outset, we note that, in this kind of case, when the trial court receives evidence in addition to that considered by the Board
“the decision of the Board upon all matters of fact shall, nevertheless, be final and conclusive, except to the extent limited by the next following sentence. If the Circuit Court after hearing all the evidence offered determines that had the decision rendered by the Board been rendered after hearing such evidence that such decision would not have been manifestly wrong, then the Circuit Court shall sustain the decision of the Board, and if the Circuit Court, after considering all the evidence, determines that the decision rendered by the Board would have been manifestly wrong had such decision been rendered after considering all the evidence considered by the Circuit Court, then in that event the Circuit Court shall render the decision which that Court concludes should be rendered on all the evidence considered by that Court.”
1973 Ala. Acts No. 1272 (Reg.Session), Art. Ill, § 11.
Denard had worked for the Birmingham Fire and Rescue Service (Service) for more than twenty-six years when he injured his left foot while fighting a fire. As a result of the injury, Denard applied for an “extraordinary disability pension” pursuant to Act 1272. The Board approved the application on May 11, 1988.
Denard was a “fire lieutenant”; his job required, among other things, the “ability to perform strenuous work under adverse and stressful conditions for a sustained period of time.” Denard states that his customary duties required doing all of the physically demanding tasks that are required of a rank- and-file fire fighter. He testified that he was required to carry one hundred-fifty pound persons and to climb ladders.
On October 25, 1990, Denard was examined by Dr. Danny Michael to determine if he was still disabled. Dr. Michael stated that Denard had sustained an injury to the plantar fascia of the left foot and that, if he was required to be on his feet for normal activities, he was still going to be “fairly restricted.” Dr. Michael further stated that Denard was disabled from “returning to all the duties of a fireman.” The Board then continued Denard’s pension.
Dr. Gregory J. Miller then evaluated De-nard, and on April 10, 1991, stated that De-nard should be able to resume his activities as a “fire captain.” Denard’s attorney sent a letter to Dr. Miller explaining that Denard was “a combat fire lieutenant” and that he must be able to “climb ladders, lift heavy objects, operate hoses and other fire fighting equipment, and, if necessary, rescue co-workers or citizens from burning buildings or other emergency situations.” Denard was then evaluated by the occupational therapist overseeing his work-hardening program, and Denard underwent a functional capacity evaluation. After a meeting with the fire chief, who classified Denard’s job level as medium work which required “lifting 50 lbs. maximum with frequent lifting and/or carrying of objects weighing 25 lbs.,” the therapist tested Denard’s ability to perform “medium work.” Based on his and Dr. Michael’s examination of Denard and on Denard’s performance on the evaluation, Dr. Miller still contended that Denard should be able to return to his employment as a fire lieutenant.
The Board voted to discontinue the pension, and Denard filed his complaint against the Board. Denard was then examined by Dr. John Morris, who stated at deposition that, although there are some things that Denard can do, he should not climb stairs or carry weight over fifty pounds and that he should not jump or land on his foot. He further stated that if Denard’s work involved these types of activities, he should ask for some type of limited activity at his job.
Denard contends that the trial court misinterpreted Act 1272, Art. VI, § 8, and erred by affirming the Board’s decision to revoke the pension where, he claims, “[he] is unable to perform the active fire fighting duties that *631 he had customarily performed prior to his injury.”
Art. VI, § 8, provides as follows:
“In the event a Participant shall become totally disabled to perform his customary duties by reason of personal injury received as a result of an accident arising out of and in the course of the employment in the Service and occurring at a definite time and place, then in the event such total disability shall continue until the Participant ceases to draw salary as an employee of the City such disabled Participant shall be entitled to a monthly allowance from the Fund equal to seventy per cent (70%) of his monthly salary at the time of the accident which resulted in such total disability.”
Denard claims that § 8 provides for the continuation of his pension if he is “totally disabled to perform his customary duties” and that he is entitled to the pension even if he can perform some of his customary duties or comparable duties. Denard also claims that the trial court ignored medical evidence that he could not perform fire-fighting duties.
The Board responds by saying that the trial court correctly decided the matter based on the standard of review and that the decision rendered by the Board was not manifestly wrong. Act No. 1272, Art. Ill, § 11. The Board further states that the evidence presented does not demonstrate that the Board was manifestly wrong in concluding that Denard could perform the duties of a fire lieutenant. It refers to the testimony of Dr. Miller in which he opined that the injury to Denard’s “left foot does not restrict him at this time from doing the job that he was doing at the time of injury,” and that he has the ability to resume the previous employment, even though he may not be able to because of his overall physical condition, not because of the injury to his foot. When asked whether the pain in Denard’s foot would prevent him from “climbing ladders and pulling people out of burning buildings and running up and down stairs,” Dr. Miller replied, “I currently have no evidence to suggest that his pain would prevent him from doing that.”
In addition, the occupational therapist stated that, based on the requirements outlined by the City, she believed that Denard could “perform his required job demands.” However, she did not test his ability to lift a one hundred-fifty pound person and carry the person out of a budding. In her written report, the therapist stated: “[Denard] was able to carry 50 pounds with no apparent difficulty, while only lifting 25 pounds, and showing minimal to no non-verbal signs of pain. Based on this data, client appears to have not given total maximum effort. Therapist recommends that he return to a position that requires less force on the left ankle, but in a medium work category.”
In its judgment, the trial court placed emphasis on the statement in the fire lieutenant’s job description that qualifies the duties as follows: “ALL RESPONSIBILITIES MAY NOT BE PERFORMED BY ALL INCUMBENTS.” The trial court further stated that “[b]oth Miller and [the therapist] had a basis for concluding that it was not necessary that Denard be able to perform all of the job functions of a fire fighter in order to meet the qualifications and have the abilities to perform the duties and functions of a Fire Lieutenant.”
Such emphasis by the trial court was misplaced, however. This court recently held that, for participants in the system prior to January 1, 1989, there must be a finding that he or she is able to perform the customary or substantially comparable duties of his or her job before benefits can be discontinued. See Large v. Board of Managers of the City of Birmingham Retirement & Relief System, 623 So.2d 1174 (Ala.Civ.App.1993).
In Large, supra, we stated the following: “While there may be some evidence that Large could possibly return to work following a successful reconditioning program, that testimony is conditioned on the happening of an indeterminate event and is speculative at best. In light of the undisputed medical evidence presented to the circuit court that Large is unable ‘to perform his customary duties or substantially comparable duties,’ we find that the decision of the circuit court is manifestly wrong and must be reversed.
*632 “Our decision, however, does not prohibit the Board from enrolling Large in future reconditioning programs or from conducting additional medical evaluations in an attempt to return Large to active employment. We are merely concluding that at the present time, the evidence does not reveal that Large is capable of performing the customary duties of a firefighter.”
623 So.2d at 1176.
As noted earlier, testimony revealed that Denard, prior to his injury, customarily was required to perform the same physically demanding tasks as a line fire fighter, i.e., carrying one .hundred-fifty pound persons and climbing ladders. Although Denard’s abilities may fit the official job description of a fire lieutenant, the evidence indicated that Denard, at the time of trial, could not return to a job and perform his customary duties or those substantially comparable. In other words, the record evidence did not support a finding that Denard could return to carrying one hundred-fifty pound persons or climbing ladders, nor did the evidence show that he could perform duties substantially comparable. Accordingly, we find that the decision of the trial court was manifestly wrong.
At this point, we reiterate our earlier-quoted language from Large, supra, however, and note that the Board may enroll De-nard in future reconditioning programs in an attempt to return him to active employment. The judgment is reversed and the cause is remanded with instructions for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur.